IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

ALIM ABDURAHMAN, et. al.,       )

               )    **PLANTIFFS' JOINT**

      **Plaintiffs**     )    **RESPONSE TO**

               )    **HYUNDAI'S AND**

               )    **DEFENDANT DEALERS'**

               )    **MOTION TO DISMISS**

**v.**                  )    **COMPLAINT**

               )    **Case No: 3:14-cv-00002**

HYUNDAI MOTOR AMERICA, INC., et. al.,  )

               )

      **Defendants**.    )

## PLAINTIFFS' PRELIMINARY STATEMENT

1.     Hyundai's Motion to Dismiss is an un-plugged shotgun volley which frivolously reaches in every direction; falsely distorts and fabricates alleged facts; is rife with *ad hominem* attacks to thinly veil Hyundai's massive wrongdoing; and serves as a good example of why the public is disgusted with this country's class action litigation. *See*, Congressional finding that class actions have "*undermined public respect for our judicial system*", found in Class Action Fairness Act of 2005, Public Law 109-2, Section 2(a)(2)(C). The Motion to Dismiss must be overruled and denied.

2.     Defendant Dealers' Motion to Dismiss relies upon the same law, pleadings, and facts, is filed by the same counsel, and is subject to the same liberal rules for amendment. Therefore, the Plaintiffs respond to both motions jointly and simultaneously.

## PLAINTIFFS RESPONSE TO HYUNDAI'S
## PRELIMINARY STATEMENT

3.      This case is a simple one: the Plaintiffs have alleged Hyundai warranted its 2011-

2013 Elantra's "delivered" 40 miles-per-gallon on the highway and the vehicles do not

come close to doing so. This Court, to administer and obtain justice, must make

Hyundai understand this litigation will be focused on establishing the facts, and

determining the legal ramifications thereof: either judgment for the Plaintiffs or judgment

for the Defendants.  If this Court will not direct this litigation to accomplish these goals,

this litigation will languish, the will of the people of Virginia as expressed by the General

Assembly will be thwarted, and the judicial system will suffer in the eyes of the public.

4.      Hyundai alleges and attributes improper, unethical, and illegal motives to the

Plaintiffs' counsel. Hyundai's choice to litigate in this manner requires a response, and

an accurate presentation of the facts. However, the Court should readily recognize that

Hyundai's choice of this tactic reveals its inability to defend the merits of the lawsuit: it

fraudulently warranted to 16,000 Virginians its Elantra would deliver 40 miles-per-gallon

when it will not come close to that.

5.      Counsel for the Plaintiffs' has practiced for 27 years from his hometown of

Lynchburg. In that time he has handled approximately 30 – 60 lemon law cases per

year, which is believed to be considerably more than any other lawyer west of

Richmond. He has been recognized as a specialist in this area by numerous Virginia

courts. See, e.g. O'Neil v Chrysler Corporation, 54.VA.Cir.64 (2000): "James B.

Feinman is one of only a small group of lawyers handling "Lemon Law" cases in

Virginia. He is well known as a specialist in this area of practice". The court in O'Neil,

the Honorable Thomas J. Horne presiding, found that Feinman has "*unique
qualifications in the handling of such matters*". See also, <u>Roatenberry v Ford Motor Co.</u>,
74 Cir.509 from the Circuit Court of Roanoke, the Honorable Jonathan M. Apgar
presiding, finding that "*Mr. Feinman has focused on "Lemon Law" recovery cases for
over 20 years, at the frequency of 30 – 60 per year.*" Mr. Feinman has never lost a jury
trial in the many Lemon Law cases he has tried, and has settled many hundreds more
obtaining the full remedy allowed by Virginia law. Hyundai's' multiple attacks on the
moral and professional standing of Plaintiffs' counsel are made solely to divert attention
away from what this case is about: Hyundai expressly and fraudulently warranted to
16,000 Virginians that its Elantra would deliver 40 miles-per-gallon and it does not come
close.

6.     This Court must recognize that Hyundai is not the typical corporate party usually
seen before it. The controlling corporate officers of Hyundai have been convicted of
embezzling $110.5 million from the company and using the money for bribes and their
personal use. Chairman Chung Mong-Koo, Vice Chairman Kim Dong Jin, Chief
Financial Officer Lee Tung Dae, and Vice President for Procurement Kim Seung Nyun
have all been convicted of embezzlement. <u>See</u>, Bloomberg.com article dated February
5, 2007, attached hereto is Exhibit 1. Although, the Chairman received lengthy prison
sentences imposed by the trial court, a Korean appellate court suspended the prison
terms, "*saying the tycoon is too important to South Korea's economy to go to
jail for embezzlement.*" <u>See</u>, Associated Press article reported and broadcast by NBC
News dated September 6, 2007 attached as Exhibit Two. The Korean appellate court
ordered Hyundai's chairman to pay $1.1 billion dollars to charity. Within a few short

years of this event, Hyundai concocted the fraudulent and highly profitable scheme to expressly warrant 40 miles-per-gallon when the vehicles would not come close to achieving this.  The Chairman was recognized as the "*hands-on leader*" of Hyundai and "*The symbol of the company.*" *Id*.  He "*has been actively running the company.*" *Id*.  The normal presumption of good faith attributed to a corporate party cannot be allowed when the officers controlling the governance of that corporation have been convicted of a $100 million dollar embezzlement and bribery scheme and the Korean court system determines they are too important to go to prison.  This Court should recognize that admitted and convicted embezzlers, bribers, and swindlers actively run the company which is the Defendant in this case.

7.    The Court should also know that while counsel for Hyundai, Mr. Neale, portrays Mr. Feinman as some type of poster boy for lawyer misconduct, the two actually have a very cordial, open, and friendly relationship.  While Mr. Neale's rhetoric paints his adversary in such ugly terms, Mr. Neale's conduct establishes differently.  Mr. Neale and his son have been guests of Mr. Feinman very recently, sitting together at Mr. Feinman's courtside seats at University of Virginia basketball games. Mr. Neale and Mr. Feinman exchange fishing and hunting photos, and frequently discuss many cases each are involved in elsewhere as professional and mutually respectful colleagues. While Mr. Neale portrays to the Court an unflattering picture, the reality of Mr. Neale's relationship with Mr. Feinman is quite different.

## THE MASS ACTION WAS FILED FOR ONE PURPOSE: TO PROTECT THE IMPORTANT AND VALUABLE RIGHTS OF THE PLAINTIFFS NAMED IN THE SUIT

8.    Hyundai and its counsel vigorously contend that the <u>class</u> action suit filed in regard to Hyundai's fraudulent warranty of 40 miles-per-gallon is not certifiable as a class action. In fact, none of the many similar class actions filed around the country have been certified under the FRCP, while none have been rejected for certification either.   Counsel for the Plaintiffs disagrees with Hyundai and its counsel, and maintain a class action is appropriate and certifiable under the Federal Rules of Civil Procedure. However, this is a decision for the Court to make, not counsel for Hyundai nor counsel for the Plaintiffs. Counsel for the Plaintiffs recognizes that it is his duty to protect his clients' interests no matter what.   It is his duty to recognize and pursue all legal procedures to secure the Plaintiffs' rights under the Virginia Lemon Law, Consumer Protection Act, and False Advertising Act. If the class action is not certified, Virginia provides the Multiple Claimant Litigation Act, VA. Code §8.01-267.1, for the citizens to pursue legal relief in cases like this. Virginia law expressly provides:

> *"(K) A party asserting either a claim, counterclaim, cross-claim, or third-party claim or a defense may plead alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.  A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on*

*legal or equitable grounds."*

9.      This mass action filed in the Circuit Court of Roanoke is consistent with and appropriate under Virginia law. When one legal course is challenged as improper under the law, it is totally appropriate to pursue another. There is nothing wrong with a "belt and suspender" approach to make sure one's pants do not fall down. Here the Federal class action suit is challenged by Hyundai and its counsel as improper. In such a circumstance the mass action suit under Virginia's Multiple Claimant Litigation Act is entirely appropriate and pursued for one reason—to protect the valuable and important legal rights of the Plaintiffs'. The truth is the embezzlers, bribers, and swindlers who run Hyundai, and the thousands of "blue-chip" lawyers they employ, simply do not want <u>any court</u> to pass judgment on Hyundai because they are "too important", as the Korean courts have held.

10.      Counsel for the Plaintiffs stands by his assertion that he will do everything legally possible to defeat the proposed nationwide settlement pending in MDL 2424. The proposed settlement will give approximately $350 to each of the Plaintiffs in exchange for a full release of a claim that Plaintiffs' counsel believes is worth more than $20,000 per Plaintiff. Plaintiffs' counsel has opposed transfer of the *Gentry* action to the MDL. If the Panel on Multi-District Litigation orders transfer, than the Plaintiffs' counsel will oppose the proposed settlement in the MDL 2424 forum. If the settlement is approved by the presiding District Court, that decision will be appealed to the 9th Circuit Court of Appeals, and if affirmed, it will be appealed to the Supreme Court of the United States. The proposed nationwide settlement is based <u>entirely on California law</u>. There are no allegations of violations of Virginia law in the Complaints the proposed nationwide

{2434 / 000}

settlement is based upon.  The "Plaintiffs" lawyers who submitted the proposed
nationwide settlement have never handled a Virginia Lemon Law case, but have
expressly declared that the Lemon Law does not apply because the safety of the
vehicle is not involved here. This is grossly wrong.  The Virginia Motor Vehicle Warranty
Enforcement Act expressly applies "*to any applicable warranty*" and "*any defect or
condition, including those that do not affect the drivability of the vehicle, which
significantly impairs the use, market value, or safety of the motor vehicle.*" <u>See</u>, VA.
Code §59.1-207.13. The lawyers proposing the nationwide settlement do not know what
they are talking about when it comes to Virginia Lemon Law.  Hyundai's embezzlers,
bribers, and swindlers are more than happy to support a settlement which pays $350 for
a claim in excess of $20,000.  The Class Action Fairness Act of 2005 specifically found
that it is an abuse of a class action where the court makes "*Judgments that impose their
view of the law on other States and bind the rights of the residents of these States.*"  It is
correct that undersigned counsel will do everything legally in his power to defeat the
proposed nationwide settlement in MDL 2424.

### CONGRESS HAS EXPRESSLY STATED THAT CASES LIKE *ABDURAHAM* CANNOT BE TRANSFERRED TO OR CONTROLLED BY A MULTIDISTRICT LITIGATION

11.     The Class Action Fairness Act of 2005 specifically provides that a mass action
filed in state court and removed to Federal Court cannot be transferred to a MDL,
multidistrict litigation established by the United States Judicial Panel on Multidistrict
Litigation. <u>See</u>, 28 U.S.C. §1332 (d)(11)(C)(i).  Congress clearly does not want mass
actions such as the one at bar transferred to or controlled by MDL 2424. As such, any

suggestion by Hyundai that this case is controlled by, guided by, or waiting upon any action in MDL 2424 is clearly contrary to the express will of Congress. *See*, 28 U.S.C. §1332 (d)(11)(C)(i).

## INDIVIDUALS ARE NOT PRECLUDED FROM PURSUING INDIVIDUAL ACTIONS MERELY BECAUSE A CLASS ACTION HAS BEEN FILED

12.    Hyundai contends that because *Gentry* is for the same people named as plaintiffs in *Abduraham*, *Abduraham* should be dismissed with prejudice.  Hyundai ignores that Gentry is a <u>class</u> action seeking to try the claims on a representative basis, while *Abduraham* is a <u>mass</u> action which asserts the claim of individual plaintiffs on behalf of themselves, and not in a representative capacity on behalf of others. All the case law found by Plaintiffs' counsel establishes that FRCP 23 does not "*deprive a person of an individual claim if such claim would have existed in the absence of the rule.*" <u>Lyon v. Atlantic Coast Line R.Co.,</u> 224 F.Supp 1014 (W.D. South Cardina, 1964) citing <u>Giesecke v. Denver Transway, Corp.</u> 31 F.Supp 957 (D.C.Del) and 35A C.J.S. Federal Civil Procedure §63 et seq. *See* <u>also</u>, <u>Cox v. Hutchinson</u>, 204 F. Supp 442 (S.D. Indiana, 1962) holding that a Plaintiff still has his individual claim even if the asserted class action fails. Citing <u>Weeks, et al v. Bareco Oil Co, et al</u>, 125 F.2d 84 (7th Cir. 1941). The <u>mass</u> action asserts the individual claim of each named plaintiff. The mere fact that many class action suits have been filed around the country purporting to represent the same plaintiffs in *Abduraham* does not prevent individuals from pursuing their own claims as they do in this suit.

## THE COMPLAINT, AND THE MOTION TO DISMISS, MUST BE VIEWED THROUGH THE EXPRESSED INTENT OF THE VIRGINIA LEGISLATURE

13.    Hyundai's Motion to Dismiss necessarily requires judicial construction and interpretation of Virginia's Lemon Law, The Motor Vehicle Warranty Enforcement Act, VA. Code §59.1-207.9 *et seq*.  Every action or decision of a Virginia state court, or a federal court applying Virginia law, must be informed and guided by the expressed declared intent of the Virginia General Assembly in enacting this law as the will of the people. The Virginia General Assembly declared:

### §59.1-207.10- Intent

*"The General Assembly recognizes that a motor vehicle is a major consumer purchase, and there is no doubt that a defective motor vehicle creates a hardship for the consumer. It is the intent of the General Assembly that a good faith motor vehicle warranty complaint by a consumer should be resolved by the manufacturer, or its agent, within a specified period of time. It is further the intent of the General Assembly to provide the statutory procedures whereby a consumer may receive a replacement motor vehicle, or a full refund, for a warranty issued by the manufacturer.  However, nothing in this chapter shall in any way limit the rights or remedies which are otherwise available to a consumer under any other law."*

14.    For over 200 years Virginia law has given a liberal construction to statutes enacted for the suppression of fraud. *See*, *Fitzhugh v. Anderson* 12 VA. (2 Hen. & M) 289 (1808): *"… the principles and rules of the common law, as now universally known and understood, are so strong against fraud in every shape, that the common law would have attained every end attained by the said statutes; and that these statutes cannot receive too liberal a construction, or be too much extended in suppression of fraud."* 12 VA. 302.

15.    *"A remedial statute is to be construed liberally so as to suppress the mischief and advance the remedy, so that which is plainly within the spirit, meaning and purpose of a remedial statute, though not therein expressed in terms, is as much a part of it as if it were so expressed."* See, <u>Fitzhugh v. Anderson</u>, 12 VA. (2 Hen. & M) 289 (1808); <u>Pitman v. Com</u>., 41 VA. (2 Rob.) 800 (1843); <u>Shumate v. Com</u>., 56 VA. (15 Gratt.) 653 (1860); <u>Davis v. Com.,</u> 57 VA. (16 Gratt) 134 (1861); <u>Price v. Harrison</u>, 72 VA. (31 Gratt) 114 (1878); <u>Troth v. Robertson</u>, 78 VA. 46 (1883); <u>Rhea v. Shields</u>, 103 VA. 305, 49 S.E. 70 (1904); <u>Richardson v. Comm</u>., 131 VA. 802, 109 S.E. 460 (1921); <u>Bowman v. Com.,</u> 201 VA. 656, 112 S.E.2d 887 (1959); <u>Stevens v. Abbott, Proctor & Paine</u>, 288 F.Supp. 836 (E.D. Va. 1968); <u>Virginia Brewing Company v. Webber</u>, 167 VA. 67, 187 S.E. 447 (1936); <u>City of Richmond v. Richmond Metrop. Authority</u>, 210 VA. 645, 172 S.E.2d 831 (1970). <u>See also,</u> 17 Michie's Jurisprudence, "Statutes", §72 (1979).

## THE PLAINTIFFS' COMPLAINT COMPLIES WITH
## VIRGINIA LAW IN ALL RESPECTS

16.    Hyundai attacks the Plaintiffs' Complaint in several respects, alleging the Complaint must be dismissed. Hyundai's lawyers are merely playing a sophisticated game of "Pleadings Gotcha" while ignoring Virginia law on the construction and interpretation of statutes, and the requirements for pleading.

17.    Rule 1:4 (j) of the Rules of the Supreme Court of Virginia states:

> *"(j) Brevity is enjoined as the outstanding characteristic of good pleading. In any pleading a simple statement, in numbered paragraphs, of the essential facts, is sufficient."*

18.    *"Mere matter of form in pleadings are for the most part not regarded as material or as vitiating the pleading. The courts look to the trial of an action at law, not as a battle of the pleaders, but more as a trial of substantive rights of the parties and should not regard as serious objections more technical than real, which do not operate to the prejudice of the substantive rights of a litigant."* See, 14B Michie's Jurisprudence, "Pleading" §7 (1988). *"Generally speaking, written pleadings need not be of any particular form but must be such as to enable a person of common understanding to know what was intended."* Id. See also, Levitin v. Norfolk Nat. Bank, 163 VA. 694, 177 S.E. 205 (1934). *"No greater particularity is required in pleading than the nature of the thing pleaded will conveniently admit, and less particularity is required when the facts lie more in the knowledge of the opposite party than of the party pleading."* Id. *"It has been stated as a general rule that a plaintiff's initial pleading must aver all facts necessary to show a cause of action against the defendant. However, it is not the function of the plaintiff's initial pleading to set out all the facts and circumstances in the case, but simply to give the defendant such reasonable information of the nature of the complaint as will enable him to make his defense."* 14B Michie's Jurisprudence §31.  Clearly, the Complaint is sufficient under the law because Hyundai has shown no trouble asserting defenses to the Plaintiffs' claim.

19.    *"A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.  See, Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted); Fed.R.Civ.P. 12(b)(6); Fed.R.Civ.P. 8.  A court must take 'the material allegations of the complaint' as admitted, and liberally construe the complaint in favor of a plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).*

However, upon consideration of motions to dismiss for failure to state a claim upon

which relief may be granted, I apply the pleading standard as refined by Bell Atlantic v.

Twombly, 550 U.S.544 (2007), and Ashcroft v. Iqbal, 556 U.S., 129 S.Ct. 1937 (2009).

Plaintiffs must allege facts that 'state a claim to relief that is plausible on its face,' i.e.,

facts that 'have nudged their claims across the line from conceivable to plausible.'

Twombly, 550 U.S. at 570.  A claim is plausible if the complaint contains 'factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged,' and if there is 'more than a sheer possibility that a defendant has

acted unlawfully.'" See, Judge Moon's Opinion in AIU Insurance Co. v. Omega Flex,

Inc., 2011 WL 2295270.


## HYUNDAI'S CLAIM OF FAILURE TO PLEAD
## NOTICE HAS NO MERIT


20.    Hyundai's claim that the Complaint must be dismissed because it does not allege

Hyundai received the "required notice" has no merit. This issue is not one that requires

pleading nor can the merits of the notice issue be reached on the pleadings. The

Virginia Lemon Law has several provisions regarding notice to the manufacturer. "No

written notice is required unless the {warranty or} owner's manual 'clearly and

conspicuously' discloses to the consumer that written notification is prerequisite to relief

under the Act." Section 59.1-207.13(D). See also, Smith v. General Motors, 35 VA. Cir.

112 (1995). Hyundai is entitled to no written notice unless it alleges and establishes it

clearly and conspicuously disclosed to the consumer "that written notification of the

nonconformity to the manufacturer is required before the consumer may be eligible for a

*refund or replacement of the vehicle under this chapter.*" Hyundai has not made any such allegation nor could it. In any event, the issue of notice is one resolved after discovery and establishment of the facts. Counsel for the Plaintiffs, in filing hundreds and hundreds of Lemon Law Complaints, never had this issue raised on the pleadings in a motion to dismiss. This issue is a defense available to the manufacturer under certain circumstances which must be established through discovery and at trial. It cannot be resolved at the pleading stage, and the motion to dismiss must be denied on this ground. In the alternative, Plaintiffs move for leave to amend.

## HYUNDAI'S CLAIM THAT THE COMPLAINT FAILS TO ALLEGE PLAINTIFFS MADE A REASONABLE NUMBER OF ATTEMPTS TO HAVE THEIR VEHICLES REPAIRED HAS NO MERIT

21.    Hyundai, per its usual practice, misstates Virginia law on the issue of repair attempts. §59.1-207.13 merely states that the manufacturer shall repurchase the vehicle if it does not conform the vehicle to any applicable warranty after a reasonable number of attempts. The statute goes on to provide a presumption that a reasonable number of attempts have been made if certain facts are met, but what is a "reasonable" number of attempts is fact dependent on the circumstances of each case. The presumption is available to the Plaintiff, but it is not necessary to use it. *See*, *Subaru v. Peters*, 256 VA. 43, 50, 500 S.E.2d 803, 806. (1998). Here the Plaintiffs specifically alleged:

> "11. *Hyundai cannot conform its vehicle to the mileage warranty it made on the 2011-2013 Elantra's. No number of repair attempts will make the vehicles obtain the warranted gas*

*mileage because the vehicles simply will not perform as
warranted."*

22.     This is not a case where a vehicle has a warranty defect or condition which can

be fixed. This is a case where "*No number of repair attempts will make the vehicles

obtain the warranted gas mileage because the vehicles simply will not perform as

warranted.*"  See, Complaint ¶11.  Normally what is "reasonable" under any

circumstances is for the jury to determine. The Plaintiffs submit that as a matter of law,

when it is established that a vehicle cannot be made to conform to an applicable

warranty no matter how many times it is subject to repair, than no repair attempts are

necessary.  The law does not require one to undertake a futility. The General Assembly

has expressly recognized that a motor vehicle which does not conform to its warranty

"*creates a hardship for the consumer.*" The General Assembly did not intend that any

consumer undergo even one repair attempt, not to mention three, when it is alleged,

and proof establishes, that no number of repair attempts will make the vehicle conform

to the warranty because the manufacturer warranted something the vehicle simply

cannot do. "*That which is plainly within the spirit, meaning, and purpose of a remedial

statute, though not therein expressed in terms, is as much a part of it as if it were so

expressed.*"  See, infra ¶ 4.  When no number of repair attempts can make a vehicle

conform to the warranty, it is just as much a part of the statute that no consumer is

required to undertake that which is futile. The motion to dismiss on this ground must be

denied. In the alternative, the Plaintiffs move for leave to amend.

## HYUNDAI'S ALLEGED STATUTE OF LIMITATION DEFENSE IS A MATTER RESOLVED THROUGH DISCOVERY, AND TRIAL, NOT THE PLEADINGS

23.    Continuing its high-dollar game of "Pleading Gotcha" Hyundai's counsel alleges the Complaint must be dismissed because it does not allege the absence of a statute of limitations defense.  A statute of limitations defense is for the Defendant to prove, not the Plaintiffs to disprove.  Again, Hyundai's embezzlers, bribers, and swindlers and their counsel take every opportunity to manipulate this case into something other than what it is.  This is peculiar behavior when Hyundai's president has declared "*We are owning this issue and letting folks know we care and are making it right…*"  The motion to dismiss for failure to disprove a statute of limitations defense must be denied.  In the alternative, the Plaintiffs seek leave to amend.

## "SIGNIFICANT IMPAIRMENT" IS AN ISSUE TO BE PROVEN AT TRIAL, NOT BY THE INITIAL COMPLAINT

24.    Whether Hyundai's failure to comply with the 40 mile-per-gallon warranty significantly impairs the use, market value, or safety of the vehicles is for the jury to decide. It is not to be decided by the Plaintiffs' initial Complaint. "*It is not the function of the Plaintiff's initial pleading to set out all the facts and circumstances in the case, but simply to give the defendant such reasonable information of the nature of the complaint as will enable him to make his defense.*" *Infra* paragraph 18.  Clearly Hyundai has been given such reasonable information about the Plaintiffs' complaint as will enable it to make its defense.  The motion to dismiss on this ground must be denied. In the

alternative, move for leave to amend is respectfully submitted.

## THE PLAINTIFFS' CONSUMER PROTECTION ACT CLAIMS ARE ALLEGED WITH SUFFICIENT PARTICULARITY TO MEET THE APPROPRIATE RELAXED PLEADING STANDARD

25.     The Defendants argue that the Plaintiffs should be held to the rigorous pleading standard of Rule 9(b). However, under similar fact patterns, other Courts have allowed a relaxed pleading standard. In U.S. ex rel. Ellis v. Sheikh, the Western District of New York "relaxed the specificity requirement of Rule 9(b) when the fraud being alleged is part of a complex scheme occurring over a long period of time." See U.S. ex rel. Ellis v. Sheikh, 583 F. Supp. 2d 434, 439 (W.D.N.Y. 2008) (citing United States of America ex rel. Paul P. McDermott v. Genentech, Inc., 2006 WL 3741920 at *12, 2006 U.S. Dist. LEXIS 90586 at *36 (D.C.Me.2006) (A " 'relaxed rule of pleading' may be allowed as an exception in ... cases ... where 'the alleged conduct took place over a long period of time or involved numerous occurrences.) The Sheikh plaintiff alleged an almost daily pattern of fraudulent billing which occurred over a two-year period. See id. Here, the Plaintiffs allege a "false, deceptive warranty and advertising campaign for the Hyundai Elantra" beginning in November, 2010 and "continu[ing] in operation to this day." See Compl. at ¶5.

26.     A similar relaxed standard was applied within this Circuit in United States v. Gwinn, 2008 WL 867927 (S.D.W. Va. Mar. 31, 2008).[1] In explaining the reason for a

---

[1] "In cases where there have been extensive allegations resulting in numerous instances of fraud, other courts have held that "[s]trict application of the requirements of Rule 9(b) may be relaxed...." California, ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Abbott Labs., Inc. (In re Pharm. Indus. Average Wholesale Price Litig.), 478 F.Supp.2d 164, 171-72 (D.Mass.2007) ("For instance, an alleged scheme of fraud may involve

relaxed standard, the Court noted, "Three of the purposes behind Rule 9(b) are to
protect defendants from frivolous suits, eliminate fraud actions in which all the facts are
learned after discovery, and protect defendants from harm to their goodwill and
reputation." See Gwinn, 2008 WL 867927 at *11 (citing Harrison v. Westinghouse
Savannah River Co. (Harrison I), 176 F.3d 776, 784 (4th Cir.1999). In this case, the
facts alleged and the advertisements attached to the Plaintiffs' Complaint are sufficient
to establish a prima facie case that the Defendants made the fraudulent statement at
issue in this case. Indeed, the Defendants openly admit to misrepresenting their MPG
and have independently, though insufficiently, informed the public of that misconduct.
See Memorandum in Support of Defendants Motion to Dismiss at pp. 22-23. Thus, there
is minimal risk of a frivolous lawsuit or undue harm to the Defendants' goodwill and
reputation. Moreover, while the intimate details of the Defendants misconduct can only
be revealed through the sun light of discovery, the advertisement and warranties
attached to the Plaintiffs' Complaint evidence fraud that is not solely learned by
discovery. Therefore, the Plaintiffs' Complaint meets the appropriate relaxed standard
under Rule 9(b).

---

numerous transactions that occur over a long period of time, and pleading the precise
specifics with regard to every instance of fraudulent conduct may be impractical.")
(citing *Corley v. Rosewood Care Ctr., Inc.,* 142 F.3d 1041, 1050 (7th Cir.1998) (applying
relaxed standard to allegations of fraud in plaintiff's racketeering complaint)); *United
States ex rel. Johnson v. Shell Oil Co.,* 183 F.R.D. 204, 206-07 (E.D.Tex.1998)
(collecting cases that apply relaxed standard)); *United States ex rel. Pogue v. Diabetes
Treatment Ctrs. of Am., Inc.,* 238 F.Supp.2d 258, 268 (D.D.C.2002) ("Additionally,
where a complaint covers a multi-year period, Rule 9(b) may not require a detailed
allegation of all facts supporting each and every instance of submission of a false
claim.").."
United States v. Gwinn, CIVA 5:06-CV-00267, 2008 WL 867927, at *11 (S.D.W. Va.
Mar. 31, 2008).

{2434 / 000}
17

27.    If the Court is inclined to dismiss the Plaintiffs' Consumer Protection Act claim on

the grounds of a Rule 9(b) particularity requirement, the Plaintiffs request and the Court

should grant leave to amend the Complaint. "Leave to amend a complaint should

generally be freely granted, and there is at present no basis in the record for this court

to conclude that any efforts to amend would be futile or otherwise improper." See U.S.

ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 920 (4th Cir. 2013). (citing Mayfield v.

NASCAR, Inc., 674 F.3d 369, 379 (4th Cir.2012) ("[A] request to amend should only be

denied if one of three facts is present: the amendment would be prejudicial to the

opposing party, there has been bad faith on the part of the moving party, or amendment

would be futile." (internal quotation marks omitted)).


## PLAINTIFFS HAVE ARTICLE III STANDING TO ASSERT CLAIMS
## BASED ON THE WARRANTY AND ADVERTISING CAMPAIGN DESIGNED,
## CONDUCTED, AND PERPETUATED BY THE DEFENDANTS

### A.  Defendants Entire Standing Argument Depends upon Straw-man Allegations Alien to the Plaintiffs' Complaint.

28.    The Defendants' entire standing argument is the dictionary definition of straw-

man argument.[2]  Indeed, Defendants argument on standing is wholly dependent upon

its attempt to replace the allegations made by the Plaintiffs with the allegations the

Defendant wishes Plaintiffs had made. Plaintiffs' allegations do not center on EPA

estimates or Monroney window stickers. Instead, the Plaintiffs' clear allegation, which at

---

[2] See Black's Law Dictionary, 8th Edition, Bryan Garner, editor, (West 2004). ("straw man. […] A tenuous and exaggerated counterargument that an advocate puts forward for the sole purpose of disproving it.")

this stage must be accepted as fact[3], is that the Defendant waged a "false, deceptive

warranty and advertising campaign for the Hyundai Elantra" beginning "[a]t the Los

Angeles Auto Show in November, 2010" and "continu[ing] in operation to this day." See

Compl. ¶ 5.

29.    Defendant's campaign "[was] not required by, nor [did] they comply with, the

Federal laws regarding advertising of motor vehicle mileage." See Compl. ¶10. The

numerous affirmations of fact made by Hyundai, its agents, and authorized dealers

regarding the highway mileage allegedly obtained by the Elantra are a part of the

contract between Hyundai and members of the Class, and constitute express warranties

under Virginia Law. See, Compl. ¶ 10 (citing Daughtrey v. Ashe, 243 VA. 73, 413

S.E.2d 336 (1992); Martin v. American Medical Systems, Inc., 116 F.3d 102 (4th Cir.

1997)). Each of the named representatives specifically relied upon Hyundai's mile-per-

gallon advertisements and warranties. See Compl. ¶ 17. The Defendants fully expected,

intended, and enticed this reliance. See Compl. ¶ 17.

30.    Defendants argue that: (1) the plaintiffs who purchased before November 2, 2012

cannot allege an injury "[a]s to the adjustments to the EPA-MPG estimates; and (2) that

"plaintiffs who purchased vehicles with revised post-November 2, 2012 window stickers

cannot establish a causal connection" due to the adjusted numbers on the window

---

[3] See e.g., Tobey v. Jones, 706 F.3d 379, 383 (4th Cir. 2013) ("From the outset we
must underscore that this case is before us on appeal from denial of a Fed.R.Civ.P.
12(b)(6) motion to dismiss. Therefore, the facts set forth are from the vantage point of
Mr. Tobey, with all reasonable inferences drawn in his favor." (citing *Jenkins v.
McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Republican
Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992)).

sticker. <u>See</u> Memorandum in Support of Defendants' Motion to Dismiss, pp. 22-24. This straw-man argument is entirely off track. The Plaintiffs' Complaint is void of any reference whatsoever to EPA estimates or window stickers. The Plaintiffs never allege reliance in any way on EPA estimates or window stickers. Yet, the Defendants continue to pound this podium because they lack any facts or law to support their standing argument.

31.    No argument presented by the Defendants either addresses or proves that plaintiffs lack standing to bring the case they have actually alleged. The Defendants cut-and-paste argumentation from EPA-related proceedings elsewhere have nothing to do with the case at bar. Because the Defendants cannot raise a standing challenge to the facts and claims actually alleged, they repeat again the same tired, irrelevant arguments.

## B. Even if the Court Allowed the Defendants to Re-write the Plaintiffs' Complaint to Suit Their Own Preferences, the "Reimbursement Program" Comes Nowhere Near Making the Plaintiffs Whole.

32.    Even if the Defendants' arguments regarding standing for the pre-November 2, 2012 purchasers were relevant to the Plaintiffs' Complaint, the Defendants' "reimbursement program" does not make the Plaintiffs whole. By the Defendants' own admission, the reimbursement program only "accounts for any difference in fuel costs attributable to the adjustments to the EPA-MPG estimates." <u>See</u> Memorandum in Support of Defendants' Motion to Dismiss, pp. 22. Thus, this reimbursement program fails to make the Plaintiffs whole because:

(1) The reimbursement is based on EPA estimates, not the Plaintiffs' real world

MPG results;

(2) The reimbursement program puts the burden and impetus entirely on the

Plaintiffs to avail themselves of the reimbursement, thereby adding additional

costs and inconvenience;

(3) The reimbursement program ignores the potential for treble damages in this

case; and

(4) The reimbursement program contains no option for a buyback of the

offending vehicle, which is a potential remedy in this case.

For these reasons, the reimbursement program offered by the Defendants fails to make

the Plaintiffs whole. Therefore, even under the Defendants flawed interpretation of the

Plaintiffs' Complaint, the pre-November 2, 2012 purchasers have standing to bring this

action.

## C. Even if the Court Allowed the Defendants to Re-write the Plaintiffs' Complaint to Suit Their Own Preferences, Plaintiffs Who Purchased Their Elantras after November 2, 2012 Also Have Standing.

33.    Virginians who purchased Elantras after the November 2, 2012 change to the

Monroney stickers also have standing. First, counsel must again emphasize that the

Plaintiffs claims—whether they purchased before or after November 2, 2012—are not

based on EPA estimates or window stickers.[4] Even if the Defendants were correct that

their November 2, 2012 announcement bifurcated the claims of Virginia Elantra owners,

---

[4] Defendants misrepresentation of this issue mirrors the old saying, "If you repeat a lie
often enough, people will believe it, and you will even come to believe it yourself."

the Plaintiffs Complaint specifically alleges ongoing misconduct after November 2,

2012. Specifically, the Complaint alleges that Defendant Hyundai Motor America's

website continued to advertise and warrant that the 2013 Elantra would deliver 38 MPG

on the highway, without and disclaimer, well after November 2, 2013. See Compl. at ¶

16(D). The Complaint also alleges that the 2013 Elantra warranty book continues to

warrant an Elantra that delivers up to 40 MPG on the highway. See Compl. at ¶ 5.

Despite Defendants' protestations, all Plaintiffs, regardless of purchase date, have

standing in this matter.

### HYUNDAI'S CLAIM OF FEDERAL PRE-EMPTION FAILS ON ITS FACE BECAUSE HYUNDAI LIES TO THE COURT ABOUT WHAT THE PLAINTIFFS' CLAIMS ARE

34.     This Court has seen embezzlers, bribers, and swindlers before, and sadly, on

many occasions. They shamelessly distort and lie, and repeat their lies over and over

as if no one is smart enough to know they are lying. Hyundai displays the typical

behavior of embezzlers, bribers, and swindlers when it tells this Court:

> *"The foundation of plaintiffs' Complaint is their challenge to the ratings for the Elantra vehicles, and their contention that those ratings are a warranty. However, challenges to EPA-MPG ratings, and efforts to impose legal requirements concerning the ratings that differ from those under Federal law—such as converting the ratings to a warranty guaranteeing what any individual driver will experience—are preempted both expressly and impliedly."*

35.     Hyundai distorts and lies to this Court about *"the foundation of plaintiffs*

*Complaint"*, even though the Complaint itself specifically alleges the affirmations of fact

upon which they are suing "*are not required by, nor do they comply with, the Federal laws regarding advertising of motor vehicle mileage*." *See*, Paragraph 10 of Complaint. The Plaintiffs bring suit based on non-EPA affirmations of fact which pursuant to Virginia law are a part of the contract between Hyundai and the Plaintiffs. Even though this is specifically alleged, the character of Hyundai and its lawyers allows them to lie to this Court by saying "*the foundation*" of the Complaint are EPA mileage estimates, even though Plaintiffs make it clear they do not sue based on any EPA required mileage estimation. Hyundai's lies to this Court are easy to understand—Hyundai seeks the safe harbor immunity under the EPA laws so it pretends that it is what this lawsuit is about, even though it knows it is not. The exact language of the affirmations of fact made by Hyundai and upon which the Plaintiffs base their Complaint are in the Complaint and Exhibits attached thereto. The Court can readily see that none of these affirmations of fact are identified as EPA-required statements and the Court should not even consider the pre-emption issue when it is based on the lie that the Plaintiffs are suing on EPA-required statements. This part of the motion to dismiss must be denied and over-ruled.

36.    Hyundai's distortion regarding the fact that the Plaintiffs' Complaint is based on statements freely made by Hyundai and is not based on any EPA-required statements is a knowing, intentional falsehood to this Court made by each of Hyundai's lawyers. Hyundai and its lawyers have already been told by U.S. District Court Judge George H. Wu that it is ignoring the fact that Plaintiffs are suing based on statements freely made by Hyundai and not required by the EPA. *See*, Tentative Ruling on Motion to Dismiss First Amended Complaint attached hereto as Exhibit Three, where Judge Wu wrote "*Again, Defendant ignores the fact that Plaintiff has alleged Hyundai disseminated an

*advertising and marketing campaign that claimed the Elantra could achieve 40 MPG in
real world conditions, and did not properly reference or disclaim the EPA Estimate.
Thus this basis for dismissing these three common law claims is unavailing."* When a
Federal District Court Judge tells a lawyer he is ignoring a fact, and that same lawyer
ignores the same fact to another Federal Judge, it is a knowing deception that the Court
cannot ignore.

## LEGAL PRINCIPLES APPLICABLE TO
## THE ISSUE OF FEDERAL PRE-EMPTION

37.    The legal principles and analysis applicable to the issue of federal pre-emption
was sufficiently stated by the Supreme Court of the United States in the case of *Altria v.
Good*, 555 US 70 (2008), 129 S.Ct. 538, 172 L.Ed.2d 398 (2008). The Supreme Court
of the United States made it clear that there is a presumption against pre-emption of the
state laws:

> *"When addressing questions of express or implied pre-emption, we
> begin our analysis "with the assumption that the historic police
> powers of the States [are] not to be superseded by the Federal Act
> unless that was the clear and manifest purpose of Congress." Rice
> v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91
> L.E.d. 1447 (1947). That assumption applies with particular force
> when Congress has legislated in a field traditionally occupied by the
> States. Lohr, 518 U.S., 485, 116 S.Ct. 2240; see also Reilly, 533
> U.S., at 541-542, 121 S.Ct. 2404 ("Because 'federal law is said to
> bar state action in [a] fiel[d] of traditional state regulation,' namely,
> advertising, we 'wor[k] on the assumption that the historic police
> powers of the States [a]re not to be superseded by the Federal Act
> unless that [is] the clear and manifest purpose of Congress' "
> (citation omitted)). Thus, when the text of a pre-emption clause is
> susceptible of more than one plausible reading, courts ordinarily
> "accept the reading that disfavors pre-emption." Bates v. Dow
> Agrosciences, LLC, 544 U.S. 431, 449, 125 S.Ct. 1788, 161
> L.Ed.2d 687 (2005)."*

## SECTION 32914 IS INAPPLICABLE TO THIS CASE—
## VIRGINIA HAS NOT ADOPTED OR ENFORCED A LAW
## OR REGULATION RELATED TO FUEL ECONOMY STANDARDS
## OR AVERAGE FUEL ECONOMY STANDARDS

38.     Nothing in Section 32914 can be interpreted to infer that Congress intended to

pre-empt an automobile manufacturer's liability under state law for statements it freely

made without any requirement or compulsion from the EPA or any other governmental

body. The Plaintiffs' Complaint is based on statements Hyundai freely made on its own

behalf to lure Plaintiffs into buying its cars.  No Federal law pre-empts Hyundai's liability

for doing so under state law.  Merely because Virginia law imposes liability for

statements freely made by Hyundai and not required under any Federal regulation does

not mean that Virginia is "*adopting or enforcing a law or regulation related to fuel

economy standards or for automobiles covered by an average fuel economy

standard…*".


## HYUNDAI'S CLAIMS OF CONFLICT PREEMPTION AND
## EPA PRIMARY JURISDICTION HAVE NO MERIT

39.     As the Honorable Judge Wu ruled in Exhibit Three, there is no pre-emption on

any basis for statements regarding what the Elantra will deliver in miles-per-gallon in

"*real world*" conditions.  The Plaintiffs do not seek to enforce any state law or regulation

regarding mileage standards.  There is no conflict with Federal law, nor any intrusion

upon a field occupied by the Federal government.  This is simply a suit exercising the

police power of the Commonwealth of Virginia for statements freely made by a

manufacturer in the sale of automobiles.  Hyundai has not come close to carrying its

burden to prove pre-emption. In fact, Hyundai's intentional distortion of the facts, after another Federal Judge told Hyundai it was "*ignoring the facts*" is a knowing deception to this Court that should convince the Court of Hyundai's guilt of all charges made against it. Intelligent, sophisticated litigants do not lie when they have a valid, provable defense, because when they do, it destroys their valid, provable defense.  Hyundai's claim of conflict pre-emption and primary jurisdiction have no merit.

## CONCLUSION

The Motion to Dismiss should be overruled and denied in all respects.

Respectfully Submitted,

By: ___**s/ James B. Feinman**___
Of Counsel

James B. Feinman (VSB# 28125)
Andrew D. Finnicum (VSB# 80358)
James B. Feinman & Associates
P.O. Box 697
1003 Church Street. 2nd Floor
Lynchburg, Virginia 24505
(434) 846-7603 (phone)
(434) 846-0158 (fax)
Counsel for Plaintiff
jb@jfeinman.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2014, I electronically filed the forgoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: James F. Neale, Esquire, Counsel for defendants. I have emailed a copy to James F. Neale, Esquire, Counsel for defendant at jneale@mcguirewoods.com; Shon Morgan, Esquire, shonmorgan@quinnemanuel.com ; Joseph Ashby, Esquire, josephashby@quinnemanuel.com ; W.R. Baldwin, III, Esquire, Counsel for Defendant Pearson Imports, Inc, via facsimile (804) 285-7779; Kishon Ansley Clayborne, Registered Agent for Hall Automotive Group, Inc., via first class mail: 3203 Dogwood Drive, Portsmouth, VA 23703.

s/ James B. Feinman
Virginia Bar Number 28125
Attorney for the Plaintiff
James B. Feinman & Associates
1003 Church Street
P.O. Box 697
Lynchburg, Virginia 24505
Telephone: (434) 846-7603
Fax: (434) 846-0158
jb@jfeinman.com